UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JOHN THOMPSON,                                  :

                       Plaintiff,     :     **REPORT AND**
                                                              **RECOMMENDATION**
        -against-                       :     **TO THE HONORABLE**
                                                               **COLLEEN MCMAHON**
DET. TIMOTHY R. TRACY #6653, and                :
NEW YORK CITY POLICE DEPT.,                          00 Civ. 8360 (CM)(FM)
                                                :
                       Defendants.
                                                :
------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.     Introduction

        Plaintiff John Thompson ("Thompson") brings this pro se civil rights action pursuant to 42 U.S.C. § 1983 against Detective Timothy R. Tracy ("Det. Tracy") and the New York City Police Department ("NYPD") (together, the "Defendants"). In his complaint, Thompson alleges that he was subjected to excessive force during an arrest on November 3, 1999, which itself resulted from racial profiling.

        The Defendants have now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). (Docket No. 38). They contend that there is no evidence to support an excessive force claim, that the complaint fails to state any other claim for relief, that Det. Tracy is entitled to qualified immunity, and that the NYPD is not a suable entity. (Defs.' Mem. at 1). On June 19, 2007, because Thompson had failed to respond to the Defendants' motion, Your Honor deemed the

motion fully submitted and referred it to me for a Report and Recommendation. (Docket No. 44). For the reasons set forth below, I recommend that the Defendants' motion be granted in part and denied in part. Additionally, because the referral to me was for dispositive motion purposes only, I have closed the reference.

II.  Factual Background

The Defendants submitted a statement pursuant to Local Civil Rule 56.1 as part of their motion papers but failed to comply with Local Civil Rule 56.2, which requires them to provide Thompson with a form "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as well as copies of Rule 56 and Local Civil Rule 56.1. Accordingly, on September 18, 2007, I issued an order incorporating the required notice, (see Docket No. 46), and gave Thompson until October 9, 2007, to submit any materials that he wished to have the Court consider in response to the motion. See Nelson v. Beechwood Org., No. 03 Civ. 4441 (GEL), 2006 WL 2067739, at *3 n.4 (S.D.N.Y. July 26, 2006) (following this procedure). Despite the extension of time, Thompson has not submitted any opposition papers. (See letter from Ass't Corp. Counsel Anna Nguyen to the Court, dated Oct. 15, 2007).

As the Second Circuit has cautioned, a movant may not be granted summary judgment simply because its motion is unopposed. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). Nevertheless, because Thompson failed to submit the counter-statement required by Local Civil Rule 56.1, or any other papers, he

necessarily has admitted any factual assertions advanced by the Defendants that are supported by admissible evidence. See Allen v. City of N.Y., 480 F. Supp. 2d 689, 703 (S.D.N.Y. 2007) (citing Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003)); Local Civ. R. 56.1(c).

Viewed in the light most favorable to Thompson, the evidence establishes as follows: On November 3, 1999, at approximately 1:40 a.m., three police officers seated in a taxicab, including Det. Tracy, observed Thompson purchasing drugs in the vicinity of 27th Street and 8th Avenue in Manhattan. (Defs.' R. 56.1 Stmt. ("Defs.' Stmt.") ¶ 9; Thompson Dep. at 111-14, 120-21).[1] Like Thompson, the seller was a Black male. (Thompson Dep. at 113-14). Thompson made his purchase immediately after the seller engaged in a transaction with a White purchaser. (Id. at 113). At the time of his purchase, Thompson was under the influence of narcotics and alcohol. (Defs.' Stmt. ¶ 1; Thompson Dep. at 10). He nevertheless realized that the police had observed the transaction. Not wishing to surrender the drugs he had "worked so hard" to obtain, Thompson attempted to hide approximately seventeen bags of cocaine in his mouth. (Defs.' Stmt. ¶ 12; Thompson Dep. at 121, 128, 132).

The police officers approached Thompson and repeatedly ordered him to "open [his] mouth," but he refused. (Defs.' Stmt. ¶ 13; Thompson Dep. at 128, 140).

---

[1] The Defendants originally submitted only excerpts from the Thompson deposition in support of their motion. (See Decl. of Anna Nguyen, dated Feb. 2, 2007 ("Nguyen Decl."), ¶ 2 & Ex. B). At my request, Ms. Nguyen subsequently submitted the entire transcript, which I have read in the course of preparing this Report & Recommendation.

3

According to Thompson, the officers then said, "You're going down," and forcefully threw him to the ground. After Thompson landed on his side, the officers turned him face down. (Defs.' Stmt. ¶ 15; Thompson Dep. at 135, 141-43). They then pulled Thompson's hands behind his back into a "handcuff position" and twisted his arms upward. (Thompson Dep. at 146).

The officers held Thompson down with a "foot on [his] ankle," and continued to hold his arms behind his back, while attempting to remove the bags of cocaine from his mouth by "grabbing" him around the throat and neck and "squeezing" and "choking" him. (Id. at 142, 145-47, 162). Although the officers repeatedly instructed Thompson to "spit [the drugs] out," he refused. (Id. at 147). Thompson testified that the officers never attempted to squeeze his cheeks or pry his mouth open to secure the drugs, but that there was significant pressure on his neck and that he became dizzy and had trouble breathing. (Id. at 150). Thompson further testified that he was choked for almost six minutes, after which "somebody kicked" his rib cage so forcefully that he was forced to surrender the drugs. (Id. at 146, 157-58, 163).

After Thompson expelled the drugs, an officer allegedly put his knee on Thompson's neck in order to keep him pinned to the ground. (Id. at 170). Thompson contends that the officer's knee remained in this position for two to three minutes during which time he felt a "sharp pain" in his neck. (Id. at 170, 174-75). According to

4

Thompson, at no point during the altercation did he resist the officers or physically struggle against them other than by refusing to give them his drugs.[2]  (Id. at 142).

Thompson admits that his intoxication affected his ability to assess the situation as it was unfolding.  He further concedes that he is unable to identify the specific officers who choked or kicked him.  (Id. at 147, 159).

Thompson was arrested and charged, in two counts, with Criminal Possession and Criminal Sale of a Controlled Substance in the Third Degree.  (Nguyen Decl. Ex. D).  Thereafter, as part of his post-arraignment processing, Thompson was examined by a Department of Correction doctor.  (Defs.' Stmt. ¶ 30).  Thompson alleges that the physical injuries that he sustained during the incident included bruises to his ribs and neck and ankle swelling.  (Id. ¶ 31; Thompson Dep. at 218-19, 262).  Nevertheless, he failed to point out any bruise to the doctor, whose own physical examination notes reflect no injury to Thompson's neck or ribs.  (Defs.' Stmt. ¶¶ 34, 37; Nguyen Decl. Ex. I).  The exam notes confirm that Thompson previously had surgery (specifically, an

---

[2]  According to the Defendants' memorandum of law in support of their motion, Det. Tracy "denies that he threw plaintiff to the ground, choked or kicked plaintiff, stood on plaintiff's ankle, or used any excessive force" in effectuating the arrest. (Defs.' Mem. at 12 n.3). This bare allegation in a legal memorandum, which is not supported by an affidavit or other admissible evidence, cannot be relied on in ruling on the Defendants' motion for summary judgment. See Fed. R. Civ. P. 56(e) (party moving for summary judgment must establish its entitlement to relief by setting forth "such facts as would be admissible in evidence").

"O[pen] R[eduction] I[nternal] F[ixation]") on his left ankle, but indicate that there was "no edema."[3] (Nguyen Decl. Ex. I at 168-69).

Almost one year after his arrest, on October 5, 2000, Thompson filed a notice of claim against the City of New York. (See Defs.' Stmt. ¶ 44; Nguyen Decl. Ex. J). Twenty days later, on October 25, 2000, Thompson pleaded guilty to Criminal Possession of a Controlled Substance in the Fifth Degree, for which he was sentenced, as a second felony offender, to a term of three and one-quarter to six and one-half years. (Defs.' Stmt. ¶ 43).

III. Discussion

    A. Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the court concludes that "the record taken as a whole could not lead a rational trier of fact to find for the non-

---

[3] Although Thompson claims that he was prescribed Ibuprofen for his ankle, this does not appear to be reflected on the records of his initial medical assessment. (See Defs.' Stmt. ¶ 38; Nguyen Decl. Ex I).

moving party, there is no 'genuine issue for trial,'" and summary judgment must be granted. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In deciding a motion for summary judgment, the court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and . . . draw all permissible inferences in favor of that party." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). The Court must accept as true the non-moving party's evidence, if supported by affidavits or other evidentiary material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In reviewing a motion for summary judgment, "[t]he court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried." Fischl, 128 F.3d at 55; see also Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Accordingly, "[i]f the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." Id. at 249-50 (citing Dombrowski v. Eastland, 387 U.S. 82, 87 (1967); Cities Serv. Co., 391 U.S. at 290); see also Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (the "'mere existence of a scintilla of

evidence' . . . is . . . insufficient to defeat summary judgment") (quoting Anderson, 477 U.S. at 252).

Although the same summary judgment rules apply to a party proceeding pro se, special latitude is appropriate to ensure that a meritorious claim is not foreclosed simply because the papers submitted in opposition to the motion are inartfully worded. See Morris v. Citibank, N.A., No. 97 Civ. 2127 (JGK), 1998 WL 386175, at *2 (S.D.N.Y. July 8, 1998); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) (pro se complaint should be held to less stringent standard than formal pleadings drafted by counsel); McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (pleadings should be read liberally and interpreted to "raise the strongest arguments that they suggest") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  By the same token, however, "a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Odom v. Keane, No. 95 Civ. 9941 (SS), 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

B. Claims Against the NYPD

Section 396 of the New York City Charter provides that "[all] actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter ch. 17 § 396.  The NYPD, as a New York City

8

agency, consequently is entitled to summary judgment because it is not a suable entity. See Murray v. Williams, No. 05 Civ. 9438 (NRB), 2007 WL 430419, at *4 (S.D.N.Y. Feb. 8, 2007); Sha v. N.Y.C. Police Dep't, No. 03 Civ. 5273 (DAB), 2005 WL 877852, at *4 (S.D.N.Y. Apr. 18, 2005) (Report & Rec. of Gorenstein, Mag. J.).

    C.    Claims Against Det. Tracy

        1.    Excessive Force

Thompson contends that the police officers used excessive force in the course of effectuating his arrest and forcing him to surrender the drugs. A use of force by police officers is excessive, and therefore violates the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Maxwell v. City of N.Y., 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. Graham, 490 U.S. at 396. As courts recognize, "[o]ften, the use of some physical coercion is necessary and inevitable." Pierre-Antoine v. City of N.Y., No. 04 Civ. 6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006). A plaintiff consequently must allege more than a de minimis use of force, although he need not have suffered a severe injury in order to sustain a claim of objectively unreasonable force. Id.

9

To put it mildly, the evidence in this case casts substantial doubt as to whether the alleged use of excessive force was as severe or as prolonged as Thompson contends. Among other things, Thompson failed to ask the officers for medical care after his arrest (Defs.' Stmt. ¶ 28; Thompson Dep. at 206); failed to indicate during his arraignment that he needed to see a doctor (Defs.' Stmt. ¶ 29; Thompson Dep. at 246); and is unsure that he informed the Department of Correction medical staff, during post-arrest processing, of any neck or rib injuries (Defs.' Stmt. ¶ 32; Thompson Dep. at 253-55). Thompson further concedes that his injuries were limited to neck swelling, a small bruise on his rib, and some ankle swelling, (Defs.' Stmt. ¶ 31; Thompson Dep. at 262), and his medical records do not reflect any serious injuries to his neck or ribs (Defs.' Stmt. ¶ 34; Nguyen Decl. Ex. I). The function of the Court at this juncture, however, is not to resolve disputed facts; it is to determine whether there are facts in dispute. Recognizing this, the Defendants have assumed the truth of Thompson's version of events, including his allegation that he was choked for approximately six minutes. (Defs.' Mem. at 12; Defs.' Stmt. ¶ 18). The Defendants nevertheless maintain that this use of force was de minimis and reasonable. (Defs.' Mem at 10-14).

Police officers may use reasonable force to deter suspects from swallowing evidence so long as excessive force is not employed. See Singleton v. City of Newburgh, 1 F. Supp. 2d 306, 313-14 (S.D.N.Y. 1998). It therefore may have been reasonable to grab Thompson's throat for some brief period of time to prevent him from swallowing the

cocaine. See United States v. Harrison, 432 F.2d 1328, 1329-30 (D.C. Cir. 1970). However, choking a suspect for nearly six minutes, forcefully kicking him in the ribs, and pinning him to the ground by his neck for another two to three minutes cannot fairly be characterized as a de minimis use of force. In any event, the reasonableness of such a use of force is a question for the jury, not the Court, to decide. See Maxwell, 380 F.3d at 108 (vacating grant of summary judgment against plaintiff who alleged in excessive force case that the police banged her head while placing her in a car); Robison v. Via, 821 F.2d 913, 924-25 (2d Cir. 1987) (upholding denial of summary judgment where plaintiff alleged that police officer twisted her arm, yanked her, and threw her up against a car, causing bruising, for which she did not seek medical treatment); Johnson v. City of N.Y., No. 05 Civ. 2357 (SHS), 2006 WL 2354815, at *2, *5 n.2 (S.D.N.Y. Aug. 14, 2006) (denying summary judgment despite plaintiff's admission that he suffered no physical injuries); Lucky v. City of N.Y., No. 03 Civ. 1983 (DLC), 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004) (denying summary judgment based on plaintiff's statements despite "injuries [that] appear[ed] de minimis"); Singleton, 1 F. Supp. 2d at 314 (denying summary judgment where officer caused the death of the plaintiff by "plac[ing] the web of his hand" over the plaintiff's Adam's apple "for thirty to sixty seconds, in order to prevent [the plaintiff] from swallowing what [the officer] thought to be contraband").

Even if a jury were to conclude that the police officers' collective use of force was objectively unreasonable, Thompson still would have to prove that Det. Tracy

was personally involved in order to recover damages against him for the use of excessive force. See, e.g., Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). To date, however, Thompson has been unable to identify any of the officers who allegedly caused his injuries.[4] (See Thompson Dep. at 146-47, 158-59). Accordingly, Det. Tracy is entitled to summary judgment to the extent that Thompson alleges that he was directly involved in the commission of a constitutional tort. See Pierre-Antoine, 2006 WL 1292076, at *6 (granting police officer's motion for summary judgment because plaintiff was "unable to identify any of the officers who used force against him").

It nevertheless "is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994); accord Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001). "In order for liability to attach, there must have been a realistic opportunity to . . . prevent the harm from occurring." Anderson, 17 F.3d at 557. Here, Thompson has failed to show that the aggravation of his preexisting ankle injury resulted from an action by a police officer that constituted excessive use of force or that Det. Tracy was in a position to prevent the use of such force. Thompson also has not shown that Det. Tracy had any opportunity to prevent the kick to the ribs that allegedly caused Thompson to

---

[4] At one point during his deposition, Thompson testified that the driver of the taxi was the person who threw him to the ground and that Det. Tracy was the driver. (Thompson Dep. at 140-41, 190). Thompson later conceded, however, that he did not know which officer was the driver. (Id. at 190-91).

12

surrender his drugs. These actions consequently cannot give rise to a viable failure to intervene claim. On the other hand, if Thompson was choked for almost six minutes or his neck was pinned down for two to three minutes, Det. Tracy might well have had both the opportunity and an obligation to intervene. (See Thompson Dep. at 158). This presents issues of fact that cannot be resolved at this juncture as a matter of law.

        Moreover, Det. Tracy is not entitled to qualified immunity as to this aspect of Thompson's excessive force claim. Qualified immunity attaches when a constitutional right would have been violated on the facts alleged, but it was objectively reasonable for a defendant to believe that those actions did not violate clearly established law. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007) (quoting Saucier, 533 U.S. at 202) (emphasis omitted).

        By the date of Thompson's arrest, it was clear that an arrestee has a constitutional right not to be subjected to a police officer's use of excessive force during an arrest. Graham, 490 U.S. at 394-96. It further was well established that a police officer has a duty to intervene to prevent other officials from committing a constitutional tort in his presence where he reasonably could do so. Anderson, 17 F.3d at 557. Accordingly, it would have been objectively unreasonable for Det. Tracy to fail to intervene if Thompson was being subjected to an excessive use of force which he could

have prevented. Because a reasonable jury could conceivably accept Thompson's claim that the officers' use of force in this case was objectively unreasonable, Det. Tracy is not entitled to summary judgment on qualified immunity grounds. See, e.g., Kerman v. City of N.Y., 374 F.3d 93, 109 (2d Cir. 2004) (factual questions regarding qualified immunity "must be resolved by the factfinder" where there is a dispute regarding the "material historical facts"); Johnson, 2006 WL 2354815, at *5 (defendant officers not entitled to qualified immunity at summary judgment stage where plaintiff allegedly was stomped and kicked in course of arrest); Pierre-Antoine, 2006 WL 1292076, at *6 (same); see also Sullivan v. Gagnier, 225 F.3d 161, 165-66 (2d Cir. 2000) (arrestee's resistance "does not give the officer license to use force without limit").

  2. Racial Profiling

Thompson also contends that he was the victim of racial profiling. To establish a violation of the Equal Protection Clause of the Fourteenth Amendment, there must be a showing that (a) "the person, compared with others similarly situated, was selectively treated," and that (b) the "selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004). Here, however, Thompson's racial profiling claim is purely speculative. According to Thompson, immediately before his purchase, the seller, who was Black, sold drugs to a White male. Although the

officers evidently failed to arrest either individual, (Thompson Dep. 111-14, 274-75), there is no evidence that Det. Tracy observed the earlier transaction. In any event, even if Det. Tracy had observed that transaction and Thompson was the only arrestee, this would not amount to impermissible racial profiling since one of the two individuals who allegedly was permitted to escape was also Black. Thompson's racial profiling claim therefore fails as a matter of law.

### 3. Other Claims

The narrative form of Thompson's complaint makes it difficult to discern the other claims, if any, that Thompson is asserting.[5] Nevertheless, the Court has an obligation to construe his complaint liberally. See Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006); McPherson, 174 F.3d at 280.

Judged by this standard, the complaint can be read as asserting a claim for false arrest or imprisonment. To prevail on such a claim, Thompson must establish that the Defendants "intended to confine him, he was conscious of the confinement, he did not consent to the confinement, and the confinement was not otherwise privileged." Shain v. Ellison, 273 F.3d 56, 67 (2d Cir. 2001). An arrest is privileged when it is made with probable cause. Id.; Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Here, the fact that Thompson pleaded guilty to a charge arising out of his arrest conclusively establishes that there was probable cause for the arrest. Hernandez v. City of N.Y., No. 00 Civ. 9507

---

[5] The original complaint is not in the court file. A copy is annexed to the Nguyen Decl. as Exhibit A.

(RWS), 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004); see Weyant, 101 F.3d at 852. Thompson therefore cannot establish a prima facie false arrest or false imprisonment claim.

Although the complaint also could be read to assert a state law tort claim for assault or battery, Thompson evidently first filed his notice of claim on October 5, 2000, nearly one year after his arrest. (See Defs.' Stmt. ¶ 44; Nguyen Decl. Ex. J). Section 50-e of the New York General Municipal Law provides, however, that a person suing a municipality and/or its employees must file a notice of claim "within ninety days after the claims arises." N.Y. Gen. Mun. Law. § 50-e. "Where a plaintiff fails to timely file a notice of claim, his complaint will be dismissed." Gatson v. N.Y.C. Dep't of Health, 432 F. Supp. 2d 321, 326 (S.D.N.Y. 2006) (citing Corcoran v. N.Y. Power Auth., 202 F.3d 530, 541 (2d Cir. 1999)).

In this case, Thompson has not shown any reason why his untimely filing should be excused. Accordingly, any state law claims that he may be asserting must be dismissed.[6]

---

[6] In their papers, the Defendants' suggest that Thompson may be asserting a claim for malicious prosecution. To prevail on such a claim, Thompson would have to establish: (1) the initiation or continuation of a criminal proceeding against him; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions. Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995). Termination of the criminal charges in the plaintiff's favor is an essential element of the claim. Id. Here, however, Thompson pleaded guilty to a charge arising out of the drug deal that the police surveilled. He therefore cannot satisfy the second or third elements of a prima facie malicious prosecution claim. See id. ("plaintiff must show that the final disposition is

(continued...)

16

IV.     Conclusion

For the foregoing reasons, I recommend that the Defendants' motion for summary judgment be denied insofar as Thompson seeks to assert an excessive force claim against Det. Tracy on a failure to intervene theory, but that it be granted in all other respects. I recognize that this may be a pyrrhic victory for Thompson because he has not been in touch with the Court for approximately ten months and shows no signs of wanting to prosecute this action. For that reason, if Your Honor adopts this report, I further recommend that Thompson be directed to participate in a further conference with the Court at an early date and cautioned that his case may be dismissed if he fails to appear.

As noted earlier, because this case was referred for dispositive motion purposes only, I have closed the reference.

V.      Notice of Procedure for Filing of
        Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Colleen McMahon, United States District Judge, and the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e),

---

[6](...continued)
indicative of innocence").

17

72(b). Any requests for an extension of time for filing objections must be directed to Judge McMahon. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:     New York, New York
           October 31, 2007

                                             _____
                                             FRANK MAAS
                                             United States Magistrate Judge


Copies to:

Charles H. Scott, Pro Se
a/k/a John Thompson
255 West 43rd Street, Apt. 822
New York, New York 10036

Anna Le Nguyen, Esq.
New York City Law Department
Fax: (212) 788-9776